UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

REBECCA LYNNE THOMAS,

     Plaintiff,

v.                                          Case No. 1:15cv243-WTH-CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security ("Commissioner") denying Rebecca Lynne Thomas's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. This case has been referred to the undersigned Magistrate Judge pursuant to the authority of 28 U.S.C. § 636(b) and N.D. Fla. Loc. R. 72.2(D), relating to review of administrative determinations under the Act. Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, should be affirmed and the application for DIB denied.

ISSUES ON REVIEW

Ms. Thomas, who will be referred to as claimant, plaintiff, or by name, raises 4 issues. She claims the Administrative Law Judge ("ALJ") erred by: (1) improperly minimizing Dr. Greenberg's findings and failing to explain why his opinions concerning diagnoses and limitations were rejected; (2) finding claimant's mental impairments do not cause even minimal limitations; (3) finding claimant's bilateral carpal tunnel syndrome does not result in upper extremity limitations; and (4) failing to meaningfully address the effect of claimant's chronic fatigue syndrome on her ability to function on a sustained full-time basis. (Doc. 13).

PROCEDURAL HISTORY

On October 23, 2012, plaintiff filed an application for DIB, claiming disability beginning October 2, 2012. T. 82.[1] The Commissioner denied the application initially and on reconsideration. T. 93, 106. After a hearing on November 18, 2014, the ALJ found claimant not disabled under the Act. T. 24-45, 47. The Appeals Council denied the request for further review and, as a result, the ALJ's decision became the final determination of the Commissioner. T. 1-3. The determination of the Commissioner is now before the court for review.

---

[1] The administrative record filed by the Commissioner consists of 11 volumes (docs. 11-2 through 11-12) and has 536 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

• Claimant has not engaged in substantial gainful activity since October 2, 2012, the alleged onset date.  T. 29.

• Claimant has the following severe impairments: fibromyalgia, degenerative disc disease (DDD) of the cervical and lumbar spine, bilateral carpal tunnel syndrome, a history of irritable bowel syndrome (IBS) and gastroesophageal reflux disease (GERD), a history of migraine headaches, history of hypothyroidism and obesity.  T. 29.

• Claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she is able to lift/carry and push/pull 20 pounds occasionally (defined as 1/3 of the workday) and 10 pounds frequently (defined as up to 2/3 of the workday).  She is able to sit for 4 hours at one time for a total of 8 hours per day; stand/walk for 2 hours at one time for a total of 6 hours per 8-hour day; she is precluded from climbing ladders, ropes, or scaffolds but is capable of occasional climbing of ramps/stairs, and occasional balancing, stooping, kneeling, crouching, and crawling.  She has no manipulative, visual, communicative, or environmental limitations.  She has no significant mental limitations.  T. 33.

• Claimant is capable of performing past relevant work. She can perform the job of medical coder biller as it is generally performed per the Dictionary of Occupational Titles ("DOT") and the job of medical assistant as it is actually performed and generally performed per the DOT. T. 39.

• Claimant has not been under a disability, as defined in the Act, from October 2, 2012, through December 18, 2014. T. 40.

STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the

decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986)

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). The reviewing court, however, may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)(4), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, she is not disabled.

2.      If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.      If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least 12 months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent her from performing her past relevant work, she is not disabled.[2]

---

[2] "[C]laimant bears the initial burden of establishing a severe impairment that keeps [her] from performing [her] past work." *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

FACT BACKGROUND AND MEDICAL HISTORY[3]

At the November 18, 2014, hearing before the ALJ, Ms. Thomas offered testimony as to her health, daily activities, and work history.  She was born on April 3, 1955, and has a GED and an associate degree in medical assisting.  T. 57.  She previously worked as a medical coder/biller and medical assistant.  T. 51.  She lives with her husband and has not driven since October 2012.  T. 55-56, 58-59.  "[A]bout 32 years ago" she was diagnosed with fibromyalgia, which causes muscle spasms "all the time."  T. 61.  She also has chronic fatigue and suffers from depression and anxiety.  T. 61-62.  She experiences pain in her hips, shoulders, neck, and back.  T. 62.  She quit working due to back pain.  T. 60.

On October 30, 2012, plaintiff presented to Dr. Timothy Elder with complaints of fatigue and "sharp stabbing chest pain."  T. 352, 355.  Dr. Elder noted claimant "sees a chiropractor" for lumbar pain and "it does help."  T. 352.  On

---

[3] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  The facts below, where not derived from the medical records, are based largely, if not entirely, on plaintiff's testimony in that regard.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

examination, Dr. Elder identified paraspinal tenderness and multiple trigger points. T. 353. He also noted claimant's affect was "depressed, somewhat flat/tearful." T. 353. Dr. Elder diagnosed chest pain secondary to fibromyalgia, sinus bradycardia, depression, irritable bowel syndrome, left hip pain, and left trochanteric bursitis. T. 354. Dr. Elder prescribed Cymbalta and referred claimant to a gastroenterologist and pain management specialist. T. 354.

On December 3, 2012, claimant reported the Cymbalta "was helping after a week but insurance wouldn't pay for it." T. 348. She "started Effexor and [it] helped 'some,' but not like Cymbalta." T. 348. Dr. Elder diagnosed fibromyalgia, hypothyroidism, and major depressive disorder. T. 349. He prescribed Synthroid for the hypothyroidism and indicated he would try to get claimant's insurance carrier to cover Cymbalta. T. 349. In the meantime, Dr. Elder provided Cymbalta samples. T. 349.

At the request of the government, Dr. Robert Greenberg evaluated claimant on January 14, 2013. T. 377-84. Ms. Thomas reported being diagnosed with fibromyalgia about 30 years ago and chronic fatigue syndrome about 20 years ago. T. 377. She indicated fibromyalgia caused "chronic, severe pain in all of her muscles and joints," and chronic fatigue syndrome caused "severe malaise." T. 377. Dr. Greenberg's physical examination revealed: (1) "severe pain on palpation and [range of motion ("ROM")] of the lumbar spine"; (2) "positive straight leg raising pain on

the right at 45 degrees and on the left at 30 degrees"; (3) "a slow gait due to her pain" but no use of an assistive device; (4) she "had difficulty tandem walking as well as difficulty walking on her heels and toes and was unable to stoop"; (5) "decreased ROM of both hips"; (6) "pain on palpation and ROM of all of the extremities"; and (7) "decreased strength in both legs, measuring 4/5." T. 379, 383. Dr. Greenberg diagnosed fibromyalgia and chronic fatigue syndrome. T. 379. He "felt that . . . claimant would be unable to perform work-related activities that required heavy lifting or bending." T. 379. A "Fibromyalgia Report" completed by Dr. Greenberg indicated claimant experienced pain in 14 of 18 tender points. T. 381. X-rays of the lumbar spine taken on January 14, 2013, showed "minimal degenerative disease with anterior spur formation at L1-L2," but "no fracture or subluxation." T. 375.

On January 22, 2013, psychologist Susan Addis, Ph.D., examined Ms. Thomas at the request of the state disability agency. Dr. Addis noted claimant's mood was sad and her affect was constricted. T. 387. Dr. Addis observed: (1) claimant "was cooperative and seemed to be a reliable historian"; (2) her mood was sad and affect constricted; (3) her thought processes were logical and goal oriented; and (4) her insight and judgment were adequate. T. 387. Dr. Addis diagnosed major depressive disorder but stated claimant's "recent, remote and immediate memory, as well as her concentration appeared to be grossly intact." T. 388. Dr. Addis also

stated that claimant's "social skills and judgment as well as her ability to perform simple repetitive tasks may be affected by her mood disorder."  T. 388.

On January 24, 2013, Sharon Ames-Dennard, Ph.D., reviewed the available evidence and determined plaintiff had mild restriction of activities of daily living ("ADLs"), mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  T. 87.  Dr. Ames-Dennard concluded claimant's affective disorder did not constitute a severe impairment, noting her "written ADLs indicate restrictions due to physical complaints."  T. 87.  Likewise, David L. Kirk, Ph.D, reviewed the record and decided "the history and the evidence of the file do not support any significant mental problems or restrictions." T. 100.

Dr. Anthony Ackerman, a neurologist, treated claimant beginning in September 2013.  On September 17, claimant reported that, "[o]ver the past few months, she had gradual onset and worsening of intermittent but severe tingling down both arms, starting in the shoulder region and into the fingers, recurring daily but can last days at a time."  T. 415.  She indicated her symptoms were exacerbated by chores but "improved with rest or taking meloxicam."  T. 415.  Dr. Ackerman diagnosed "bilateral upper extremity paresthesias," fibromyalgia, depression, anxiety, and cervical spondylosis.  T. 417.  The doctor started claimant on a trial of gabapentin, directed her to "continue using meloxicam [as needed] for breakthrough

pain," and ordered an MRI of the cervical spine and "electrodiagnostic studies of the bilateral upper extremities to evaluate for neuropathy or radiculopathy." T. 417.

Electromyography ("EMG") testing on October 9, 2013, produced "an abnormal study with electrophysiological evidence of bilateral carpal tunnel syndrome," but revealed "no evidence of radiculopathy in upper extremities." T. 419-21. An October 11, 2013, MRI of the cervical spine showed: (1) "mild multilevel degenerative disc disease and marginal spondylosis at a few levels and mild articular arthropathy without any significant central canal or foraminal stenosis at any level"; (2) "no neural impingement at any level"; and (3) "no intradural lesions." T. 413-14.

On March 19, 2014, claimant returned to Dr. Elder with complaints of depression. T. 406. Dr. Elder diagnosed hypothyroidism and fibromyalgia. T. 406. He increased claimant's dose of Synthroid, hoping that "better treatment of her hypothyroidism will help her depression." T. 406. On April 30, 2014, claimant reported "increased depression" and "nausea and dizziness since thyroid med[ication] was changed." T. 404. For the depression, Dr. Elder prescribed Wellbutrin XL and referred claimant to psychologist Bernabe Marrero, Ph.D., "for assessment of emotional status, diagnostic impression and treatment recommendations." T. 404, 452.

On April 14, 2014, claimant followed up with Dr. Ackerman concerning the tingling in her arms.  T. 409.  She "denied any symptomatic relief with gabapentin." T. 409.  Dr. Ackerman reviewed the results of the EMG and MRI and instructed plaintiff to discontinue gabapentin and "wear bilateral wrist splints at bedtime and with repetitive hand/wrist movements."  T. 411.  Dr. Ackerman also referred plaintiff "to Southeastern Neurosurgery regarding bilateral carpal tunnel release."  T. 411.

When claimant visited Dr. Marrero on May 19, 2014, she reported "a history of chronic pain, chronic fatigue and depression."  T. 452.  Dr. Marrero assessed claimant's emotional adjustment with the Beck Depression Inventory-II test, which "revealed a total score of 42, indicative of severe depression."  T. 453.  Dr. Marrero diagnosed post-traumatic stress disorder, pain disorder, and depressive disorder.  T. 454.

After the ALJ issued his decision, claimant visited Virginia Hagen, a registered nurse and licensed mental health counselor who treated claimant with "cognitive/behavioral therapy" "weekly for 6 weeks" in early 2015.  T. 531-36. Hagen completed a questionnaire on March 11, 2015, in which she indicated claimant's depression, anxiety, and pain caused severe and disabling mental limitations.  T. 531-36.  Among other conclusions, Hagen believed claimant's "pain or other symptoms" were "constantly" "severe enough to interfere with attention and concentration needed to perform even simple work tasks."  T. 533.  Hagen also

indicated plaintiff's impairments or treatment would cause her to miss work more than 3 times a month.  T. 533.  Hagen indicated claimant had experienced these limitations since October 2012.  T. 536.

## ANALYSIS

Ms. Thomas first argues the ALJ erred by: (1) failing to explain why he assigned Dr. Greenberg's opinion great weight but did not adopt the portion thereof indicating claimant could not perform work-related activities that required bending; and (2) mischaracterizing Dr. Greenberg's examination findings.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.").  The ALJ gave Dr. Greenberg's opinion "generally great weight as he noted that the claimant could not do work-related activities that required heavy lifting or bending." T. 38-39.  The ALJ also gave "great weight to [Dr. Greenberg's] consultative exam findings as they were generally benign." T. 39.  Specifically, the ALJ noted that "[a]lthough she had some issue of positive straight leg raising, range of motion was intact except for some reduced bilateral hip motion." T. 39.  The ALJ indicated Dr. Greenberg's "exam findings and opinion are generally consistent with light work with occasional postural motions." T. 39.

The ALJ's discussion of Dr. Greenberg's opinion, coupled with the discussion of the state agency physician's opinion, sufficiently articulates the ALJ's rationale

for finding claimant could perform occasional postural movements. After reviewing Dr. Greenberg's examination findings and the other available evidence, Dr. Lionel Henry concluded, inter alia, plaintiff could frequently stoop. T. 101-03. The ALJ "generally [gave Dr. Henry's] opinion great weight" but stated: "[I]n light of rather benign physical and neurological exam findings but considering the claimant's long history of fibromyalgia, minimal [degenerative disc disease] and her use of pain medication, the undersigned finds that she is appropriately limited to occasional . . . stooping[.]" T. 39. Thus, the ALJ did not credit Dr. Greenberg's opinion as to claimant's postural limitations based on the lack of objective evidence supporting a complete inability to bend or stoop.

Substantial evidence supports the ALJ's characterization of the objective evidence as benign and, therefore, the determination that plaintiff could perform light work with occasional stooping. Diagnostic imaging and physical examinations revealed only minimal abnormalities. X-rays of the lumbar spine taken on January 14, 2013, showed "minimal degenerative disease with anterior spur formation at L1-L2," and "no fracture or subluxation." T. 375. An October 2013 MRI of the cervical spine demonstrated: (1) "mild multilevel degenerative disc disease and marginal spondylosis at a few levels and mild articular arthropathy without any significant central canal or foraminal stenosis at any level"; (2) "no neural impingement at any level"; and (3) "no intradural lesions." T. 413-14.

Dr. Greenberg observed "no abnormal curvature of the cervical, thoracic, or lumbar spine" and noted "full ROM of the lumbar spine." T. 379. Although Dr. Greenberg noted plaintiff experienced "severe pain on palpation and ROM of the lumbar spine," T. 379, this merely reflects plaintiff's subjective response to the examination. The ALJ, however, found "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible" and claimant does not challenge that finding in this appeal. T. 37; *see United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned."). The transcription of plaintiff's statements into Dr. Greenberg's report does not necessarily make the statements more credible.[4] In addition, although Dr. Henry did not examine claimant, he reviewed the medical evidence and his opinion also supports the ALJ's RFC determination. T. 101-03; *see* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation.").

---

[4] In addition, Dr. Greenberg is a pulmonologist. T. 377. Because he does not specialize in treating musculoskeletal disorders, his opinion concerning claimant's ability to stoop or bend is subject to less deference. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

Plaintiff next argues the determination that she had "no significant mental limitations" is not supported by substantial evidence because it is contrary to the examining psychologist's opinion and the opinions of treating providers. Plaintiff claims the ALJ's analysis of Dr. Addis's opinion was flawed because the doctor's opinion concerning the effects of plaintiff's mood disorder was not incorporated into the RFC determination. After examining plaintiff, Dr. Addis indicated "her social skills and judgment as well as her ability to perform simple repetitive tasks may be affected by her mood disorder."[5]  T. 388.  The ALJ indicated he gave "some consideration and weight" to this portion of Dr. Addis's opinion but concluded claimant had "no significant mental limitations." T. 31, 33.

Substantial evidence supports the ALJ's decision not to incorporate this portion of Dr. Addis's opinion—or any mental limitation—into the RFC determination. Although Dr. Addis observed plaintiff's mood was sad and her affect constricted, the examination also showed: (1) claimant "is able to care for her ADL's," though "there are times when her husband has to assist her"; (2) her thought processes were logical and goal oriented; (3) "no peculiarity or bizarreness" associated with her thought content; (4) adequate judgment and insight; (5) she was

---

[5] The phrasing employed by Dr. Addis to describe plaintiff's limitations detracts from the persuasiveness of plaintiff's argument.  Dr. Addis stated claimant's abilities *may* be affected by her mood disorder; the doctor did not unequivocally conclude claimant's mood disorder caused significant mental limitations.

oriented to time, person, place, and situation; (6) her concentration and her recent, remote, and immediate memory "appeared to be grossly intact"; and (7) "she was cooperative and seemed to be a reliable historian." T. 386-88.

When Ms. Thomas was asked at the hearing whether her physical or mental limitations caused more problems at work, she stated "it was mostly the physical." T. 60. The ALJ also noted claimant's mental health treatment was "rather minimal and conservative" and substantial evidence supports that finding. T. 31; *see Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) ("When evaluating a claimant's statements regarding [her] symptoms and their functional effects, the ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints.") (*citing* S.S.R. 96-7p at *7). The ALJ observed that treatment "primarily consisted of some medication management from her [primary care physician] that she did not start until September 2013," and "she has not required regular mental health counseling . . . or in-house psychiatric hospitalization." T. 31.

Consistent with the ALJ's observation, in September 2012—1 month before the alleged disability onset date—Dr. Ku-Lang Chang noted plaintiff "declined pharmacotherapy or counseling" for depression. T. 295. In May 2014 Dr. Marrero recommended that claimant "participate in individual psychotherapy to enable adaptive coping with presenting stressors and chronic pain." T. 454. Ms. Thomas

attended the "initial individual therapy session" with Dr. Marrero in June 2014, but then discontinued the treatment and did not return.  T. 456-59.

The ALJ's RFC assessment is also supported by the opinions of Drs. Ames-Dennard and Kirk.  These psychologists reviewed the available evidence—including Dr. Addis's report—and concluded claimant did not have a severe mental impairment.  T. 87, 100.  Although Drs. Ames-Dennard and Kirk did not examine claimant, they are, as agency consultants, "highly qualified . . . psychologists . . . who are also experts in Social Security disability evaluation."   20 C.F.R. § 404.1527(e)(2)(i).  The ALJ "generally [gave] great weight" to these opinions "as they are supported by the overall benign mental status exams and limited treatment."  T. 31.

The ALJ also correctly noted "there is no opinion from any treating mental health provider or her [primary care physician] regarding any mental limitations or opinions of disability."  T. 31.  Plaintiff claims the ALJ's statement is not accurate because Dr. Addis offered an opinion regarding mental limitations; Dr. Addis, however, is a consultative examiner and not a "treating mental health provider" or "primary care physician."

Based on the foregoing, the ALJ's assessment of plaintiff's mental impairments is supported by substantial evidence.  Plaintiff did not carry her burden of establishing any limitations stemming from a mental impairment.

After the ALJ issued his decision, however, plaintiff submitted evidence from Nurse Hagen to the Appeals Council.  Plaintiff argues the mental health questionnaire completed by Hagen renders the ALJ's decision to deny benefits unsupported by substantial evidence and the Appeals Council erred by denying review. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").  Plaintiff claims the questionnaire, combined with the other evidence of record, establishes that her mental impairments cause work-related limitations.

Hagen's assessment does not demonstrate the Commissioner's denial of benefits was erroneous.  As a registered nurse and mental health counselor, Hagen is not an "acceptable medical source" under the regulations, 20 C.F.R. § 404.1513(a), and cannot render a "medical opinion."  20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  Nevertheless, evidence from "other sources" like Hagen may be used to show the severity of impairments and how they affect ability to work.  20 C.F.R. §

404.1513(d)(1).  Hagen's opinion, however, is inconsistent with the evidence cited above, including the opinions of the acceptable medical sources, Drs. Ames-Dennard and Kirk.  Because there is not a reasonable possibility that Hagen's assessment would change the ALJ's decision, the Appeals Council did not err by denying review.

Plaintiff next claims the finding that her carpal tunnel syndrome does not cause upper extremity limitations is not supported by substantial evidence because objective testing and treatment records corroborate the existence of the condition. The ALJ identified "bilateral carpal tunnel syndrome" as a severe impairment; he stated claimant "had some issues of bilateral carpal tunnel syndrome," but also noted "she has had intact strength noted throughout her exams."  T. 29, 39.  Thus, the ALJ found "no indication to support her allegations of weakness or support for any manipulative limitations."  T. 39.  The ALJ's decision, however, did restrict claimant to lifting/carrying and pushing/pulling 20 pounds occasionally and 10 pounds frequently.  T. 33.

Substantial evidence supports the ALJ's findings concerning claimant's upper extremities.  Although the EMG testing supported Dr. Ackerman's diagnosis of carpal tunnel syndrome, T. 411, neither the testing nor the diagnosis establish the severity of the condition.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to

which they limit [the] ability to work or undermine the ALJ's determination in that regard.").

The relevant medical evidence supports the determination the condition was not as severe as claimed. The EMG testing showed "no evidence of radiculopathy in upper extremities." T. 421. Physical and neurological examinations in September 2013 and April 2014 revealed "strength was 5/5 throughout all extremities." T. 410, 416. Dr. Greenberg's January 2013 examination results—favored by plaintiff on a previous point—showed full range of motion in the upper extremities, "grip strength was 5/5 bilaterally," and claimant "did not have any difficulty buttoning and unbuttoning her clothing." T. 379. At the hearing, plaintiff testified that she was able hold a leash to walk her small dog once a day. T. 67, 71-72.

In addition, on April 14, 2014, Dr. Ackerman asked claimant to "consider hand therapy," but she deferred. T. 411. Plaintiff's decision to decline recommended treatment suggests the carpal tunnel syndrome is not as severe as claimed. Similarly, although Dr. Ackerman referred claimant to Southeastern Neurosurgery "regarding bilateral carpal tunnel release," T. 411, plaintiff has not shown she followed up on the referral. Furthermore, plaintiff did not present evidence from any medical source indicating the condition caused upper extremity or manipulative limitations; even Dr. Ackerman merely directed plaintiff to wear wrist splints "with repetitive hand/wrist movements." T. 411. Based on the

foregoing, the ALJ did not err in assessing the functional limitations resulting from claimant's carpal tunnel syndrome.

Lastly, plaintiff argues the ALJ did not meaningfully address the effect of chronic fatigue syndrome on her ability to work. Relatedly, plaintiff claims the ALJ failed "to address [Dr. Greenberg's] diagnosis of chronic fatigue syndrome in violation of Social Security Ruling 14-1p[.]" (Doc. 13, p. 12).

Although claimant suggests the evidence of chronic fatigue syndrome was overlooked, the ALJ referenced plaintiff's complaints of chronic fatigue throughout the decision, T. 30, 34, 36, 38, and specifically mentioned that Dr. Greenberg diagnosed the condition. T. 36. The ALJ also noted that despite "dealing with . . . chronic fatigue for the past 25-30 years . . . [claimant] was able to work and earning above [substantial gainful activity] levels." T. 38.

Furthermore, Dr. Greenberg's opinion as to claimant's abilities was based on all his diagnoses, including chronic fatigue syndrome. The ALJ adopted the portion of Dr. Greenberg's opinion concerning claimant's inability to perform heavy lifting and, as discussed above, the ALJ's rejection of Dr. Greenberg's postural findings does not constitute reversible error. In sum, claimant has not identified—or presented a medical opinion supporting—any work-related limitation caused by chronic fatigue syndrome not accounted for in the ALJ's RFC assessment. Thus, even assuming the ALJ should have expressly identified chronic fatigue syndrome

as a medically determinable impairment, that claimed shortcoming does not require remand.

Accordingly, it is respectfully RECOMMENDED:

1.    That the decision of the Commissioner be AFFIRMED and plaintiff's application for Disability Insurance Benefits be DENIED.

2.    That the clerk be directed to close the file.

At Pensacola, Florida, this 1st day of March, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.    A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.